FILED ✓    RECEIVED ___
ENTERED ___    SERVED ON ___
COUNSEL/PARTIES OF RECORD

MAR 20 2020

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HERIBERTO TORIBIO-RUIZ,<br><br>                Plaintiff,<br><br>v.<br><br>ISIDRO BACA, *et al.*,<br><br>                Defendants. | 3:17-cv-00674-MMD-CLB<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

    This case involves a civil rights action filed by Plaintiff Heriberto Toribio-Ruiz ("Toribio-Ruiz") against Defendants Isidro Baca and Linda Fox (collectively referred to as "Defendants").[2] Currently pending before the court is Defendants' motion for summary judgment. (ECF Nos. 45, 47). Toribio-Ruiz filed no opposition to the motion. Also before the court is Toribio-Ruiz's motion for hearing (ECF No. 54), to which Defendants filed no opposition. For the reasons stated below, the court recommends that Defendants' motion for summary judgment (ECF No. 45) be denied and Toribio-Ruiz's motion for hearing (ECF No. 54) be denied as moot.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    Toribio-Ruiz is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and currently housed at the Lovelock Correctional Center ("LCC"). (ECF No. 4). Proceeding *pro se*, Toribio-Ruiz filed the instant civil rights action pursuant to 42 U.S.C. § 1983, for events that occurred at the Northern Nevada Correctional Center

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    Toribio-Ruiz also names Romeo Aranas and Sunshine Flores as defendants in this lawsuit. (*See* ECF No. 4). Defendants Aranas and Flores were served on April 2, 2019, and answers were due by April 23, 2019 (*See* ECF Nos. 32, 33). However, as of the date of this Report and Recommendation, neither defendant has made an appearance on the record.

("NNCC"), alleging two counts and seeking monetary, declaratory, and injunctive relief. (*Id.*)

The alleged events giving rise to Toribio-Ruiz's case are as follows: Toribio-Ruiz takes a variety of medications for neuropathy, gout, diabetes, arthritis, allergies, and heartburn. (ECF No. 4 at 3.) Every month, approximately ten days before his medication runs out, Toribio-Ruiz would submit a kite to NNCC's medical department, listing the "Keep On Person" ("KOP") medications that he needed refilled for the following month. (*Id.* at 4.) Toribio-Ruiz contends that beginning on February 2, 2015, he submitted a kite to Defendant Fox explaining that he had not been receiving his medication on time and that he had properly filled out a kite ten days in advance requesting his medication be refilled in a timely manner. (*Id.*) He asked if she could look into the matter to ensure it would not happen again. (*Id.*) Defendant Fox did not respond to Toribio-Ruiz. (*Id.*) Toribio-Ruiz then submitted three more kites to Fox on February 12, 18, and 22, 2015, respectively. (*Id.*) In these kites, Toribio-Ruiz reiterated that his medication was late and that he was experiencing pain from the delay. (*Id.* at 4-5.) The February 22, 2015 kite received a response, but Toribio-Ruiz still received his medication eighteen days late. (*Id.* at 5.)

On March 2, 2015, Toribio-Ruiz's medication was late again. (*Id.*) On March 7, 2015, Toribio-Ruiz submitted a kite to Defendant Flores, complaining that his medication was late, and he was in extreme pain as a result of not receiving his medication on time. (*Id.*) This kite did not receive a response. (*Id.*) Toribio-Ruiz then submitted two kites to Defendant Flores, dated March 14 and March 26, 2015, respectively, again complaining that his medication was late. (*Id.*) The March 26 kite received a response; however Toribio-Ruiz still received his medication twenty-one days late. (*Id.*)

On April 15, 2015, Toribio-Ruiz submitted a kite to Defendant Aranas in which he complained about the problem of not receiving his medication in a timely manner. (*Id.* at 5-6.) Toribio-Ruiz also explained that he had tried to resolve the issue by sending kites to Defendants Fox and Flores, but nothing resulted. (*Id.* at 6.) Toribio-Ruiz asked if

Aranas could look into the situation to ensure Toribio-Ruiz started to receive his medication on time. (*Id.*) This request to Aranas did not receive a response and Toribio-Ruiz continued to receive his medications late. (*Id.*)

Toribio-Ruiz subsequently submitted three more kites to Defendant Aranas on May 10, May 31, and June 18, 2015, respectively. (*Id.*) In them, Toribio-Ruiz requested that Aranas contact the NDOC pharmacy in Las Vegas to make sure Toribio-Ruiz received his medications on time. (*Id.*) All three kites were denied. (*Id.*)

On July 7, 2015, Toribio-Ruiz submitted a kite to Defendant Baca, in which he explained that he had not been receiving his medication on time and that he had submitted numerous kites to Fox, Flores, and Aranas, but the issue had not been resolved. (*Id.* at 6-7.) In the same kite, Toribio-Ruiz asked Defendant Baca if he could look into the situation and contact the person who is in charge of filling Toribio-Ruiz's prescriptions in order to ensure they were refilled on time. (*Id.* at 7.) This kite was denied. (*Id.*)

Toribio-Ruiz submitted three more kites to Defendant Baca on July 25, August 19, and September 1, 2015, respectively, requesting that Baca look into the situation regarding a delay in receiving refills of his medication. (*Id.*) These requests were denied. (*Id.*) Toribio-Ruiz then completed the grievance process related to his medication refills but was again denied. (*Id.* at 7-8.)

Pursuant to 28 U.S.C. § 1915(A)(a), the District Court entered a screening order allowing Toribio-Ruiz to proceed with his Count I Eighth Amendment deliberate indifference to serious medical needs claim. (ECF No. 3.) The District Court found that Toribio-Ruiz stated a colorable deliberate indifference to serious medical needs claim, based on the allegations that Defendants failed to respond to Toribio-Ruiz's requests to receive his medication refills on time and, as a result, Toribio-Ruiz suffered extreme pain. (*Id.* at 6.) Toribio-Ruiz's Count II Fourteenth Amendment due process claim was dismissed, with prejudice. (*Id.* at 7.)

3

On October 16, 2019, Defendants filed their motion for summary judgment, under seal, asserting they are entitled to summary judgment because they were not deliberately indifferent to a serious medical need and, alternatively, Defendants are entitled to qualified immunity. (ECF No. 45.) Toribio-Ruiz was given notice of the motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland*, 154 F.3d 942 (9th Cir. 1988) (ECF No. 48). On October 29, 2019, Toribio-Ruiz filed a motion to strike the motion for summary judgment, in which he objected to the filing of the motion for summary judgment under seal. (ECF No. 49.) On November 4, 2019, Toribio-Ruiz filed a response to the motion for summary judgment, which provided further objection to the motion for summary judgment but did not provide a substantive opposition (*See* ECF No. 50). On November 18, 2019, Defendants filed a reply to the motion to strike. (ECF No. 51.) The court construed Defendants' reply, ECF No. 51, as a motion to withdraw the motion to seal the motion for summary judgment, which the court granted. (*See* ECF No. 53.) Further, the court denied Toribio-Ruiz's motion to strike (ECF No. 49) as moot. (*Id.*) In addition, the court *sua sponte* granted Toribio-Ruiz an extension of time to December 31, 2019 to file an opposition (ECF No. 53). However, Toribio-Ruiz did not file an opposition to Defendant's motion for summary judgment.

## II.   LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a

reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477

U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## III. DISCUSSION

### A. Civil Rights Claims under 42 U.S.C. § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B. Eighth Amendment Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in this Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

///

///

### 1. Analysis

Defendants summarize Toribio-Ruiz's claim as one related to a delay in receiving refills of his pain medications, ibuprofen and indomethacin. (*See* ECF No. 45 at 4-5.) However, Toribio-Ruiz's complaint details delays in receiving refills of his "Keep On Person" ("KOP") medications, but does not specify which KOP medications. (*See* ECF No. 4 at 3.) In support of their motion for summary judgment, Defendants provide the court with what appears to be a partial copy of one of Toribio-Ruiz's grievances related to his claim, Grievance No. 2006-30-10997. (*See* ECF No. 47-1.) A review of the partial copy of Grievance No. 2006-30-10997 states that on September 30, 2015, Toribio-Ruiz ordered six of his KOP medications: Metformin, Aspir-low, Loratadine, Omeprazole, Oyst-Cal D, and Opcon-A Eye Drops B&L. (ECF No. 47-1 at 3.) The Defendants provide a declaration related only to Toribio-Ruiz's pain prescriptions, ibuprofen and indomethacin (*see* ECF No. 45-1), but they do not provide any evidence, or even argument, as to the numerous KOP medications discussed in Grievance No. 2006-30-10997. Defendants do not provide any medical records, prescription logs, medical kites, etc. related to <u>any</u> of the medications—including the pain medications discussed in the motion and declaration—or further evidence, such as declarations or responses to interrogatories regarding Toribio-Ruiz's other KOP prescriptions. It is therefore unclear to the court that Toribio-Ruiz's medical needs were in fact adequately addressed and that any delay in receiving his KOP medications was not deliberately indifferent. Thus, because Defendants do not provide the court with sufficient evidence to show that they were not deliberately indifferent to Toribio-Ruiz's serious medical needs as it relates to delays in refilling his numerous KOP medications, the court finds Defendants failed to meet their burden of establishing that no material issue of fact exists as to Toribio-Ruiz's claim. Accordingly, summary judgment should be denied.[3]

---

[3] Because significant issues of material fact exist at this time, the court will not address Defendants' qualified immunity argument.

## IV. MOTION FOR HEARING

On January 2, 2020, Toribio-Ruiz filed a motion for hearing (ECF No. 54) related to the declaration of Lisa Walsh filed in support of Defendants' motion for summary judgment. In light of this Report and Recommendation, the court recommends that the motion for hearing (ECF No. 54) be denied as moot.

## V. CONCLUSION

Based upon the foregoing, the court recommends Defendants' motion for summary judgment (ECF No. 45) be denied and Toribio-Ruiz's motion for hearing (ECF No. 54) be denied as moot. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 45) be **DENIED**; and

**IT IS FURTHER RECOMMENDED** that Toribio-Ruiz's motion for hearing (ECF No. 54) be **DENIED** as moot.

DATED: March 20, 2020

UNITED STATES MAGISTRATE JUDGE